UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF HOME  :
BUILDERS, *et al.*,           :
                              :
        Plaintiffs,            :
                              :
   v.                          :   Civil Action No. 01-0274 (JR)
                              :
U. S. ARMY CORPS OF            :
ENGINEERS, *et al.*,           :
                              :
        Defendants.            :

**MEMORANDUM**

Plaintiffs challenge a regulation jointly issued by the Army Corps of Engineers and the Environmental Protection Agency that governs when the use of "mechanized earth-moving equipment" results in the discharge of "dredged or fill material" and is thus subject to a permitting regime administered by the Corps. Plaintiffs contend that the agencies have exceeded their authority under the Clean Water Act, the Administrative Procedure Act, and the Tenth Amendment.  In an earlier order, I dismissed these claims as unripe.  311 F.Supp. 2d 91 (2004).  That decision was reversed, 440 F.3d 459 (2006), and the case was remanded for determination of the parties' cross-motions for summary judgment.[1]

---

[1] In addition to plaintiffs' motion for summary judgment, defendants' cross-motion for summary judgment, and defendant-intervenors' cross-motion for summary judgment, I have considered the brief amicus curiae of the Pacific Legal Foundation and supplemental filings by the parties.

**BACKGROUND**

Section 301 of the Clean Water Act (CWA) prohibits the "discharge of any pollutant" unless pursuant to a permit. 33 U.S.C. § 1311(a). The statute defines a "discharge" as the "addition of any pollutant to navigable waters from any point source." Id. § 1362(12). Under section 404(a) of the CWA, the Corps is authorized to issue permits for the discharge of "dredged or fill material" into the waters of the United States. Id. § 1344(a). The Corps, in turn, requires such permits. 33 C.F.R. § 323.3(a).

This suit is the most recent manifestation of a longstanding legal dispute about just what constitutes the discharge of dredged material. Between 1986 and 1993, the Corps defined the discharge of dredged material as "any addition of dredged material into the waters of the United States" while expressly excluding "*de minimis*, incidental soil movement occurring during normal dredging operations." Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg. 41,206, 41,232 (Nov. 13, 1986) (to be codified at 33 C.F.R. § 323.2(d)). In 1993, however, the Corps issued a new rule that eliminated the *de minimis* exception. This rule, promulgated as part of a settlement agreement in California Wildlife Federation v. Tulloch, Civ. No. C90-713-CIV-5-BO (E.D.N.C. 1996), became known as the "Tulloch Rule" or "Tulloch I." It defined the

discharge of dredged material as "any addition of dredged material into, <u>including redeposit of dredged material within</u>, the waters of the United States."  Clean Water Act Regulatory Programs, 58 Fed. Reg. 45,008, 45,035 (Aug. 25, 1993)(to be codified at 33 C.F.R. § 323.2(d)(1) and 40 C.F.R. § 232.2(1))(emphasis added).

Industry trade associations challenged the expanded definition.  The district court invalidated the regulation.  <u>American Mining Cong. v. United States Army Corps of Engineers</u>, 951 F.Supp. 267 (D.D.C. 1997)(Harris, J.).  The Court of Appeals affirmed, <u>National Mining Association v. United States Army Corps of Engineers</u>, 145 F.3d 1399 (D.C. Cir. 1998), agreeing with plaintiffs and the district court that "the straightforward statutory term 'addition' cannot reasonably be said to encompass the situation in which material is removed from the waters of the United States and a small portion of it happens to fall back."  <u>Id.</u> at 1404.  Because incidental fallback represents a "net withdrawal, not an addition, of material," <u>id.</u>, the Court held, it is not a discharge and cannot be regulated.  The Court of Appeals was careful, however, to make clear that it was not prohibiting the regulation of <u>any</u> redeposit, but only incidental fallback:

> [W]e do not hold that the Corps may not legally regulate some forms of redeposit under its § 404 permitting authority. We hold only that by asserting jurisdiction over "any redeposit,"

> including incidental fallback, the Tulloch Rule outruns the Corps's statutory authority.  Since the [CWA] sets out no bright line between incidental fallback on the one hand and regulable redeposits on the other, a reasoned attempt by the agencies to draw such a line would merit considerable deference.  But the Tulloch Rule makes no effort to draw such a line, and indeed its overriding purpose appears to be to expand the Corps's permitting authority to encompass incidental fallback and, as a result, a wide range of activities that cannot remotely be said to "add" anything."

Id. at 1405.

In 2000, the Corps and EPA proposed a new rule, which would have amended the definition by adding the following language:

> A discharge of dredged material shall be presumed to result from mechanized landclearing, ditching, channelization, in-stream mining, or other mechanized excavation activity in waters of the United States. This presumption is rebutted if the party proposing such an activity demonstrates that only incidental fallback will result from its activity.

Further Revisions to the Clean Water Act Regulatory Definition of "Discharge of Dredged Material," 65 Fed. Reg. 50,108, 50,117 (Aug. 16, 2000)(to be codified at 33 C.F.R. § 323.2(d)(2) and 40 C.F.R. § 232.2(I)).  After receiving comments, in January 2001 the Corps and EPA issued their final rule, commonly known as Tulloch II.  It states:

> The Corps and EPA regard the use of mechanized earth-moving equipment to conduct landclearing, ditching, channelization, in-stream mining or other earth-moving activity in the waters of the United States as resulting in a discharge of

- 4 -

>       dredged material unless project-specific evidence
>       shows that the activity results in only incidental
>       fallback. This paragraph does not and is not
>       intended to shift any burden in any administrative
>       or judicial proceeding under the CWA.

66 Fed. Reg. 4550, 4575 (codified at 33 C.F.R. § 323.2(d)(2)(I) and 40 C.F.R. § 232.2(2)(I)).  In addition, the agencies added a provision defining incidental fallback:

>       Incidental fallback is the redeposit of small
>       volumes of dredged material that is incidental to
>       excavation activity in waters of the United States
>       when such material falls back to substantially the
>       same place as the initial removal. Examples of
>       incidental fallback include soil that is disturbed
>       when dirt is shoveled and the back-spill that
>       comes off a bucket when such small volume of soil
>       or dirt falls into substantially the same place
>       from which it was initially removed.

Id. (codified at 33 C.F.R. § 323.2(d)(2)(ii) and 40 C.F.R. § 232.2(2)(ii)).

On February 6, 2001, plaintiffs filed this suit, challenging both provisions. My view, that the case was not fit for review, because "both the court and the agencies would benefit from letting the questions presented here 'arise in some more concrete and final form,'" 311 F.Supp. 2d at 97-98 (quoting State Farm Mut. Auto Ins. Co. v. Dole, 802 F.2d 474, 479 (D.C. Cir. 1986)), was rejected, a panel of the Court of Appeals having concluded that "the legality *vel non* of the two challenged

features will not change from case to case or become clearer in a concrete setting." 440 F.3d at 464.[2]

## ANALYSIS[3]

Following the Court of Appeals' ruling on Tulloch I, Judge Harris warned the agencies against "parsing the language of [prior] decisions...to render a narrow definition of incidental fallback that is inconsistent with an objective and good faith reading of those decisions." American Mining Cong. v. Army Corps of Eng., 120 F. Supp.2d 23, 31 (D.D.C. 2000)(Harris, J.). Yet by defining incidental fallback partly in terms of volume, the EPA and the Corps appear to have done exactly what they were warned not to do. See, e.g., United States' Cross-Mot. for Summ. J. at

---

[2] In their initial motion for summary judgment, intervenor defendants argued that this court lacked jurisdiction under the APA. Although I did not address this argument in my previous memorandum, the Court of Appeals conveniently took it up and rejected it. See 440 F.3d at 463, n.3. Intervenor defendants also contended that plaintiffs lack standing. This argument is rejected. Plaintiffs have alleged a concrete and particularized injury that is actual, traceable to enforcement of the Tulloch II rule, and redressable by this court. See Utility Air Regulatory Group v. EPA, 320 F.3d 272, 277 (D.C. Cir. 2003).

[3] The D.C. Circuit has set forth two possible standards for adjudicating facial challenges. See Amfac Resorts v. U.S. Dept. Of the Interior, 282 F.3d 818 (D.C. Cir. 2002), vacated in part on other grounds, 538 U.S. 803 (2003). Under the more lenient of these tests, plaintiffs must show that the challenged rule is "invalid on only some of its applications." Id. at 827. In this case, in finding the ripeness doctrine inapplicable to plaintiffs' facial challenge, the Court of Appeals made clear that plaintiffs' claim rests on whether "_faithful_ application would carry the agency beyond its statutory mandate." 440 F.3d at 465 (internal citations omitted)(emphasis in original).

34 ("[The Court of Appeals] understood incidental fallback to have three significant characteristics: (1) it is of small volume....").

Although the decisions of this court and the Court of Appeals have described incidental fallback in terms of volume, neither court has gone so far as to require that the volume of fallback be small. Conceivably, the operator of a shovel removing 500 tons of dirt could accidentally drop all 500 tons back to the earth without redepositing anything. In determining whether fallback is incidental -- i.e., not an addition within the meaning of the Clean Water Act -- the volume of material being handled is irrelevant.[4] The difference between incidental fallback and redeposit is better understood in terms of two other factors: (1) the time the material is held before being dropped to earth and (2) the distance between the place where the

---

[4] Even if the agencies were to use volume as a factor in distinguishing incidental fallback from redeposits, a more accurate parsing of prior decisions -- as well as the government's own filings in this case -- would have revealed that incidental fallback is repeatedly described in relative, not absolute, terms. See, e.g., United States' Cross-Mot. for Summ. J. at 34 ("[T]he D.C. Circuit...repeatedly focused on incidental fallback as the redeposit of a relatively small volume of material.")(emphasis added). Tulloch II lacks any indication that the volume of fallback should be proportionally small. A faithful and logical interpretation of Tulloch II, which excepts only "small volumes," would seem to require regulation of any activity that results in the fallback of one ton of dredged material. Yet the Court of Appeals, in describing incidental fallback, raised as its example the attempted removal of 100 tons of material where only 99 tons of it were actually taken away. See 145 F.3d at 1404.

material is collected and the place where it is dropped.  In striking down Tulloch I because of its failure to exclude activities resulting only in incidental fallback, Judge Silberman stated:

> [T]he word addition carries both a temporal and geographic ambiguity.  If the material that would otherwise fall back were moved some distance away and then dropped, it very well might constitute an 'addition.'  Or if it were held from some time and then dropped back in the same spot, it might also constitute an 'addition.'"

145 F.3d at 1410 (Silberman, J., concurring).  Although Tulloch II addresses the "geographic ambiguity" raised by Judge Silberman -- material must fall back to "substantially the same place as the initial removal" -- it makes no reference to the amount of time that the material is held before it is dropped.  For that reason, and because it improperly includes a volume requirement, the rule must be rewritten.[5]

As the Corps rewrites its definition of incidental fallback, it should also reconsider its statement that it

---

[5] Plaintiffs assert two additional challenges: they claim that the agencies violated the Administrative Procedure Act by failing to provide notice and seek comment on the definition of incidental fallback, and they claim that Tulloch II violates the 10th Amendment by intruding on the regulatory authority of the states.  Because I find that the Tulloch II rule itself violates the Clean Water Act on its face, I need not address whether the procedure leading up to it violated the Act as well.  Moreover, because I can decide this case under the Clean Water Act, I need not address the plaintiff's constitutional claim.  Jean v. Nelson, 472 U.S. 846, 854 (1985)("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.").

"regards" the use of mechanized earth-moving equipment as resulting in a discharge of dredged material unless project-specific evidence shows otherwise.  That statement, followed by the coy explanation that it "is not intended to shift any burden," 66 Fed. Reg. at 4575, essentially reflects a degree of official recalcitrance that is unworthy of the Corps.

The Court of Appeals, in striking down Tulloch I, recognized the difficult task of distinguishing incidental fallback, which cannot be regulated under the Clean Water Act, from other redeposits, which can.  Because the Act sets out "no bright line" separating one from the other, the court suggested that "a reasoned attempt by the agencies to draw such a line would merit considerable deference."  145 F.3d at 1405.  The agencies, however, have made no such attempt. See United States' Cross-Mot. for Summ. J. at 14 ("Although the Rule provides important clarification of the distinction between regulable redeposits and incidental fallback, it does not create a 'bright-line' test.").  Although the agencies contend that a bright-line rule would not be "feasible or defensible," id. at 15, the Court of Appeals has made clear, and the government has acknowledged, that not all uses of mechanized earth-moving equipment may be regulated.  The agencies cannot require "project-specific evidence" from projects over which they have no regulatory authority.

* * * * *

Because the Tulloch II rule violates the Clean Water Act, it is invalid.  Therefore, plaintiffs' motion for summary judgment will be **granted**, and the Corps and EPA will be enjoined from enforcing and applying the rule.  An appropriate order accompanies this memorandum.


                                        JAMES ROBERTSON
                                   United States District Judge